Our second case for argument today is Satanic Temple, Inc. v. Rokita. Mr. McNaughton? Good morning, Your Honors. James McNaughton for the appellants. When TST filed this lawsuit, it had a very specific... Excuse me, when what? I'm sorry? When what? TST. If you would use real words, that would help. When the appellants... That's a word. When the appellants filed this lawsuit, they had a very specific and concrete intention to provide abortifacients to its members nationwide. As I stand before the court here today, it has implemented that plan. And it stands ready... The big problem here is, at least for me, I understand you to be challenging a particular law in Indiana, commonly known as SB1. If a federal court were to hold that law unconstitutional, would that provide any relief at all to the Satanic Temple? Yes. And what relief would that be? It would be able to provide abortifacients to its members in Indiana. No, they would not. There are other statutes on the books in Indiana requiring these drugs to be approved personally by a physician after at least one in-person visit. And your client, so far as I can tell, doesn't have physicians on its staff, doesn't propose to have in-person visits, and therefore would still be as barred from offering its potential services as it is with SB1 on the books. I'm asking a question, in other words, about redressability. SB1 is the name of the Senate bill. The statute that we are challenging is the section in the Indiana Code that makes it a criminal activity to violate the terms of Section 1 of the Regulations of Abortion. I understand that, but there are other statutes, right? The question I'm asking is if the statute you want enjoined were enjoined, wouldn't that leave your client in exactly the same position it now is? No. So tell me why. Okay, because the relief that we're asking for is to be relieved from the threat of criminal prosecution. For violating a particular statute. That's correct. Not for violating all Indiana statutes. Yes, let me finish my argument, which is that redressability does not have to mean we have the absolute right to go in and provide it. It's that we have the right to go in and provide it without going to jail. But you would go to jail by offering these drugs without the prescription of a physician following multiple meetings, right? That's an offense in Indiana. You're not asking for an injunction of that statute. That's my problem. The appellant has the use of a physician licensed in Indiana to prescribe these drugs after a telecommunications consultation. But that's the problem here in Indiana. I understand that. Here's what I'm trying to tell you. But if you can't engage in the conduct, how can there be a threat or an injury? Because Section 7A makes engaging in telecommunications, telehealth, a crime, okay? We're asking to have that sanction for that activity stricken. I didn't see any mention of that in your complaint or in your brief. What am I missing? The scope of the definition of SB1, okay? SB1 amended Section 7 of that provision of the code and made it applicable to Section 1 in its entirety. Section 1 in its entirety includes not only the prohibition with respect to timing, it also includes the prohibitions with respect to having a hospital, having a doctor, having in-person visits. So what we are asking for is to have all of those provisions. There's no clue about that in your brief. Absolutely no clue. Well, then I must not have spelled it out clearly enough because I thought I made it very clear that if you go, one of the difficulties that I've had with this case is thinking about it or analyzing, quote, SB1, which is not itself a statute. It is a bill that amends a statute. And if you follow the amendment. Because I'm perceiving this to be a different argument than what was presented in the brief, it might be helpful to direct us to where this argument is contained. You said you didn't spell it out. So let's see and direct us to where you want us to go. Because redressability is something that we have to answer. I understand. All right. Okay. If you look at footnote 8 on page 11 of my brief, okay, it says SB1 refers to the Senate bill. I've attached a copy in my exhibit, okay. It amended Indiana Code section 1634-2-1 by, among other things, limiting abortion to cases where pregnancy puts the mother's life at risk. Now, SB1 made the level 5 felony provisions of Indiana Code 34-7-7A applicable to Indiana Code section 1634-2-1 in its entirety, okay. I'm still lost. I've read the footnote. I don't see what that has to do to even to imply that you're raising a challenge to statutes quite apart from SB1 that regulate telehealth provisions in the context of abortion. Section 1, 1634. If you hold SB1 unconstitutional, it's undone. Do you think that automatically vacates all Indiana abortion laws? I'm not asking to invalidate SB1. If you read the complaint, we're asking. I don't read the complaint. I read appellate briefs. I read district judges' opinions. I read your brief to figure out what the legal argument against the district judge's opinion is. And I continue to express frustration that I don't find in your brief any intelligible challenge to the many state laws regulating telehealth with respect to abortion. I'm challenging 7, 1634-2-7A. And that is alleged in the complaint. That statute makes the provisions of 34-2-1 in its entirety. Any violation of those provisions? I don't. Let me finish. Your Honor, please, let me finish. Section 1 covers all of these. I'm not saying anything relevant. That's my problem. I'll let you go on, but you have to understand that unless you can answer the question as I posed it, you have no hope.  I'm trying. I'm trying. Okay. Let's take the physician. Let's take the hospital as an example. Okay. TST does not have a hospital. Okay. It's our allegation that if you provide a medical abortion outside of a provider, SB1, that's a crime. Isn't it a crime under other statutes as well? No. There's no other statutes? It's not a level 5 felony. We're not asking whether it's a level 5 felony. We're asking whether it is lawful in Indiana. And there are other statutes under which providing telehealth for abortion is not lawful in Indiana. It doesn't make any difference whether it's level 5, level 2. It's not lawful in the state of Indiana. With all due respect, Your Honor, it does. And let me explain why. Because the level 5 felony is a crime. Redressability does not mean that we strike the statute altogether and we have a carte blanche. It means that if we do it, we don't go to jail. If we have to contend with civil sanctions or contend with hearings in front of, say, a medical board, cross that bridge when we get to it. But right now what we're challenging is the fact that providing abortifacients in a hospital, outside of a hospital, is a crime in the state of Indiana. We don't have a hospital. We're a virtual clinic. We'll never have a hospital. We'll never have a clinic. But you won't have a doctor to perform abortion outside of the hospital either. We have a doctor who can prescribe abortifacients in accordance with the FDA requirements by telemedicine. Is that in the record? She came on board after the complaint was filed. So no, it's not in the record? It's not in the record. It's a matter of public record. And I pointed that out in my brief. It's Dr. J.D. If you put Dr. J.D.'s name into the Indiana Physicians Database, you'll see her correct name. So we have Dr. J.D. She can sit at a computer terminal with a Zoom and prescribe abortifacients to Indiana residents. No, she can't. Yes, she can. It's illegal in Indiana to do that. That's right. What you may be saying is I would like the federal court to enter an order that will help us perform illegal things. I think you may find that there are many obstacles to that kind of relief. I'm not asking the court for a carte blanche to provide illegal things. I'm asking the court for an order declaring that Dr. J.D. will not go to jail for committing a Level V felony. That's sufficient redress. That is sufficient redress to give us standing. But if you cannot engage in the conduct. I'm sorry? If we were to impose what you're asking, there are other Indiana statutes that would still prohibit Dr. J.D. from engaging in this conduct. So I am told. I have yet to see them. You've yet to see the Indiana law? I have yet to see them. That particular Indiana law has already been sustained by the Seventh Circuit and the Supreme Court of the United States. If you haven't yet to see it, that suggests a certain deficiency of legal research. Which specific law are we talking about? It is not my job to answer your questions. Okay. I haven't seen it. I haven't seen any other statutes. Can I ask you a question about sovereign immunity?  Is there a sovereign immunity problem here? It seems to me that what you're seeking is injunctive and declaratory relief under Indiana law, under the Indiana Religious Freedom Restoration Act. No. We're not pressing that claim. We're pressing the claim under Section 1983 for violation of constitutional rights. Okay. And again, with all due respect, Your Honor, it is illegal, you're right, it is illegal for Dr. J.D. to prescribe abortifacients by telemedicine to an Indiana resident. That's a violation of Section 1, and that makes it a crime. But I have yet to see any other statute, all right, that inhibits that activity in any way, shape, or form, if it exists. I suggest you read our opinion in Whole Women's Health against Rokita, 13 Fed 4, 595. This is not the time to do it, but you should have done it before filing this case. Well, I reserve what little time I have left. Thank you, Your Honor. Ms. Lawrence. May it please the Court. Plaintiffs bear the burden of showing that they have standing at every stage of every case, and the Satanic Temple has failed to do that here, despite repeated opportunities to do so. They have first failed to show that any individual member of their organization has standing to challenge SB 1, and second, they have not shown that they have standing as an organization, that they will actually be injured, or that any relief offered by this Court will relieve that injury. Beginning with the associational standing problem, Summers Against Earth Island Institute sets out that when an association brings up this drill down, I think it moves quicker, disability rights Wisconsin, right? And so what do we do with that case now that we have Summers kind of direct us? Yes, Your Honor. I think there are three things that this Court can do when dealing with disability rights Wisconsin, and each of those build on each other. So the first is that Prairie River, a more recent decision of this Court, asked whether disability rights statement that you don't have to name a member even survives the Summers decision. The second is to look to both Prairie Rivers and disability rights, because there, in Prairie Rivers, they set aside the issue of whether you needed to name an individual, but they said you had to at least identify them, and that Summers explicitly rejected the type of statistical analysis that the Satanic Temple is trying to do. And even in disability rights Wisconsin, there the Court found that it did not have jurisdiction because the disability rights group hadn't said that a single member would be unable, would be harmed by the law that was at issue. And that's the problem here. Even with the statistical analysis, setting aside from all of the problems with that analysis, which I'm happy to discuss if the Court would like to, but even if this Court takes that statistical analysis at its word, it only said that there were that number of women who were pregnant in a year. It did not say that those women wanted an abortion. It did not say that they were not able to procure an abortion under Indiana's current laws, nor did it say that any of those women would seek to use the Satanic Temple to effectuate that abortion. So at very minimum, the Satanic Temple must at least identify an individual who has been harmed by this law, who is a member of their organization, and they simply have not. The second way that the Satanic Temple has failed to establish standing is as an organization in and of itself. Now, to begin with, there is a... Before I move there, though, there's a line of cases in particular focused on the NAACP cases. Those are the ones that were brought up in the briefing. And how do we distinguish those from the facts of this case? Yes, Your Honor, there's two key ways to distinguish the NAACP case and others from the facts of this case in Summers. So the first is that in NAACP, every single member of the organization would be harmed by disclosure of their identities. In this case, the Satanic Temple hasn't alleged that every single member of their organization will be harmed. In fact, they've only said that it's statistically likely that 94 members of the organization might be pregnant, not that they would even be harmed in a given year. And the second way to distinguish NAACP is that even within NAACP, there still were named members of that group who were involved in the litigation, the leaders of the organization. Here there are no identified or named members of the Satanic Temple before the court today to press those concerns. So here, because the Satanic Temple hasn't alleged that every single member will be injured, they cannot represent the entire organization as a whole in the way that NAACP did in that exception to the Summers rule of naming an individual. Now, as we, in standing in their own right, the Satanic Temple does have a sovereign immunity issue. As the district court pointed out in their complaint, count four and count five were specific to violations of the Indiana Religious Freedom Restoration Act. And if perhaps there were- Senator Yawton says that he has abandoned all state law claims. So on claim under federal law, how would a sovereign immunity issue arise given well against Michigan Department of State Police, the subject of the last oral argument? Because, Your Honor, we didn't brief any of those federal issues. No, you didn't brief any of these things. That's one of the reasons we have oral argument. But as I said in the last argument, the Supreme Court has chastised courts of appeals for gratuitously making constitutional sovereign immunity holdings when the defendant is not a person for purposes of 1983. Even if that were the case, there's still a redressability and causation issues with the Satanic Temple's argument. Now, as Your Honors have pointed out, there are other independent Indiana laws that would stop the Satanic Temple from operating in Indiana under their telemedicine model. And second, I want to talk a little bit about this idea that they have a doctor that they know of who is registered to practice medicine in Indiana. The state doesn't doubt that that's true, but the question is when the district court looked to see whether they had standing, the Satanic Temple actually, this is in Appendix 265, 264 to 265, they disclaimed having any doctors on staff or the decision to hire any doctors on staff who would be employed in Indiana. For the first time now in this reply brief, they let us know that they know of a doctor who is licensed in Indiana, but even today, the Satanic Temple has not said that they plan to employ that doctor from Indiana. And again, we're not even saying that they have to have employed her. They just simply haven't said that they are going to. Without any concrete allegations of their intention to provide these abortions in Indiana, it is impossible for them to have standing here. I also would like to turn the court's attention to page 33, 34, and 35 of the appellant's brief because there they specifically disclaimed to this court the intention of performing abortions in Indiana. They said that if they are granted their relief, then other doctors already in Indiana will be able to provide abortions to TST members there, which will allow the Satanic Temple to go on to its other activities. Similarly, this idea that they are not actually going to ever provide abortions in Indiana is the argument that the Satanic Temple has put before this court, and they should be held to that judicial, that statement that they made to the court in their opening brief. Unless the court has any further questions, we ask this court to affirm the district court. All right, hearing none, thank you very much, counsel. Mr. McNaughton, anything further? In my remaining one minute and 25 seconds, no court has addressed the issue we raise here of whether the individual members of the association have a First Amendment right to remain anonymous. How would there be a First Amendment right to remain anonymous from the judge? From the judge. I can understand an argument for anonymity from the public at large. Yes. But the argument you're making is that they don't have to be identified, even to the judge in conflict. That's correct. And what's the authority for that? Oh, there's no requirement under Article III that they be identified to anybody. None. You say that, but I'm asking a concrete question. Right. What's the authority for the proposition that people who say we are at risk don't have to be identified, even to the judge? The First Amendment. It is not an absolute right. It is not an absolute right. Look, I am trying to get you to cite either a statute or a case. I am taking your answer as saying I have neither a statute nor a case. I do have a case. Then tell me what it is. The Buckley case. The Buckley case provides that if you have a First Amendment right, it is not absolute. It had nothing to do with not identifying litigants, even to a judge. I wish you would answer the question that I asked rather than the question you wish I had asked.  The answer is there are no cases on this point one way or the other. There just aren't. Okay. Thank you. Thank you. The case is taken under advisement.